**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**TEODORO VELASQUEZ BENITEZ,**

**Petitioner,**

**v.** **Case No. 2:26cv526**

**JEFFREY CRAWFORD, *et al.*,**

**Respondents.**

**REPORT AND RECOMMENDATIONS**

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Petition"). ECF No. 1. Respondents oppose granting the Petition. ECF No. 7. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be immediately released from custody.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court received the Petition on May 26, 2026, and docketed it on May 29, 2026. ECF No. 1. Petitioner Teodoro Velasquez Benitez ("Petitioner") is a native and citizen of El Salvador who is currently detained pursuant to 8 U.S.C. § 1231 at Farmville Detention Center.[1] ECF No. 7, attach. 1 at ¶ 4. On September 19, 2013, Petitioner entered the United States from Mexico "at a time and place other than designated by the Attorney General." *Id.* at ¶ 5. Petitioner was served with a Form I-867 and processed for expedited removal. *Id.* On October 10, 2013, Petitioner

[1] The factual assertions recited here are taken from the Declaration of Justin Richardson, Supervisory Detention and Deportation Officer with Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"). ECF No. 7, attach. 1.

expressed fear of returning to El Salvador and was referred to the asylum office for a fear interview. *Id.* at ¶ 6. On October 23, 2013, however, Petitioner withdrew his fear claim and was subsequently removed to El Salvador on December 5, 2013. *Id.* at ¶¶ 7–8.

On April 14, 2014, Petitioner again entered the United States from Mexico "at a time and place other than designated by the Attorney General." *Id.* at ¶ 9. Petitioner was served with a Form I-871, Notice of Intent to Reinstate Prior Order, and a Form I-205, Warrant of Removal, which reinstated his prior order of removal. *Id.* On April 21, 2014, Petitioner expressed fear of returning to El Salvador and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a reasonable-fear interview. *Id.* at ¶ 10. On July 15, 2014, a ninety-day post-order custody review ("POCR") was conducted, and it was determined that Petitioner would remain in custody pending his reasonable-fear interview. *Id.* at ¶ 11. On July 29, 2014, Petitioner was served with a negative fear determination and requested review by an Immigration Judge ("IJ"). *Id.* at ¶ 12. On August 27, 2014, an IJ overturned USCIS's negative fear determination, and Petitioner was placed in withholding-only proceedings. *Id.* at ¶ 13. On October 8, 2014, Petitioner filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *Id.* at ¶ 14. On October 16, 2014, a 180-day POCR was conducted, and it was determined that Petitioner would remain in custody pending his immigration hearing. *Id.* at ¶ 15.

On November 17, 2014, an IJ denied Petitioner's applications for relief and ordered him removed from the United States. *Id.* at ¶ 16. Petitioner appealed to the Board of Immigration Appeals ("BIA") on December 1, 2014. *Id.* at ¶ 17. On January 20, 2015, Immigration and Customs Enforcement ("ICE") Headquarters completed a 270-day POCR and determined that Petitioner would remain detained pending his appeal. *Id.* at ¶ 18. On April 28, 2015, ICE

Headquarters completed a 360-day POCR and again determined that Petitioner would remain detained pending his appeal. *Id.* at ¶ 19. On April 21, 2015, the BIA remanded Petitioner's immigration proceedings to the Immigration Court, and ERO received the BIA's decision on May 12, 2015. *Id.* at ¶ 20.

On July 8, 2015, an IJ again ordered Petitioner removed from the United States but granted him withholding of removal to El Salvador. *Id.* at ¶ 21. Petitioner was released from custody on an Order of Supervision ("OSUP") on July 13, 2015. *Id.* at ¶ 22.

While on supervised release, Petitioner was arrested by the Metropolitan Washington Airports Authority on May 12, 2016, for Trespass in violation of Virginia Code § 18.2-119 and Resisting Arrest in violation of Virginia Code § 18.2-479.1. *Id.* at ¶ 23. On July 21, 2016, Petitioner was convicted of both offenses. *Id.* On September 5, 2018, Petitioner checked in with ERO and was advised that he was to apply to three countries for admission before his next check-in. *Id.* at ¶ 24.

On February 3, 2022, Petitioner was arrested by the Alexandria Police Department for Disorderly Conduct in violation of Virginia Code § 18.2-415. *Id.* at ¶ 25. Respondents represent that the disposition of that case is unknown. *Id.* On May 6, 2023, Petitioner was arrested by the Alexandria Police Department for Driving While Intoxicated ("DWI") in violation of Virginia Code § 18.2-266. *Id.* at ¶ 26. Petitioner was subsequently convicted in the Alexandria General District Court of the amended charge of Reckless Driving in violation of Virginia Code § 46.2-852 and sentenced to 180 days in custody. *Id.*

On March 5, 2024, Petitioner was arrested by the Fairfax County Police Department for Obstructing Justice and Resisting Arrest in violation of Virginia Code § 18.2-460(A). *Id.* at ¶ 27. On February 10, 2025, Petitioner was convicted and sentenced to ninety days in custody. *Id.*

On June 29, 2025, Petitioner was arrested by the Alexandria Police Department and charged with two counts of Assault on a Law Enforcement Officer in violation of Virginia Code § 18.2-57, Hit and Run in violation of Virginia Code § 46.2-894, DWI: First Offense in violation of Virginia Code § 18.2-266, and Obstruction of Justice and Resisting Arresting in violation of Virginia Code § 18.2-460. *Id.* at ¶ 28. On February 5, 2026, Petitioner was convicted of Attempted Assault on a Law Enforcement Officer in violation of Virginia Code § 18.2-57, for which he was sentenced to three years in custody; DWI: First Offense in violation of Virginia Code § 18.2-266, for which he was sentenced to 360 days in custody; and Failure to Stop at an Accident in violation of Virginia Code § 46.2-894, for which he was sentenced to three years in custody. *Id.* Subsequently, ICE issued an immigration detainer. *Id.*

On February 6, 2026, ERO encountered Petitioner at the Alexandria City Jail and took him into civil immigration custody following his release from criminal custody. *Id.* at ¶ 29. That same day, Petitioner was served with a Notice of Revocation of Release, revoking his OSUP based on "changed circumstances"; served with a Notice of Removal to Mexico; and received an informal interview, during which he expressed fear of removal to Mexico. *Id.* at ¶¶ 29–30; *see* ECF No. 7, attachs. 2–3. On February 12, 2026, Petitioner was referred to USCIS for a third-country screening review. ECF No. 7, attach. 1 at ¶ 31. On February 26, 2026, USCIS issued a negative fear determination. *Id.* at ¶ 32.

On March 4, 2026, Petitioner filed a motion to reopen with the Immigration Court, which was denied on June 16, 2026. *Id.* at ¶ 33. While Petitioner's motion to reopen was pending, on March 16, 2026, ERO attempted to remove Petitioner to Mexico. *Id.* at ¶ 34. Petitioner "failed to comply" with the removal attempt and was served with a Form I-229, Failure to Comply. *Id.* at ¶ 34. On April 6, 2026, "the POCR clock paused as a result of Petitioner's failure to comply" with

the removal attempt. *Id.* at ¶ 35. Respondents represent that ICE has paused its removal efforts due to this proceeding "and the District Court's resulting Order to Show Cause."[2] *Id.* at ¶ 36. Respondents further represent that, "[o]nce this litigation is resolved, ERO will resume efforts to remove Petitioner from the United States." *Id.*

Petitioner subsequently filed the Petition on May 29, 2026, alleging that his continued detention violates his due process rights because his removal is no longer reasonably foreseeable. ECF No. 1 at 2, 6. Petitioner further alleges that ICE intends to remove him to Mexico despite his asserted fear of removal and that he has "never refuse[d] to sign papers at [his] check ins" with ERO concerning his OSUP. *Id.* at 7. Petitioner requests his immediate release from detention. *Id.* at 8.

Respondents filed an Opposition to the Petition on July 10, 2026, along with the Declaration of Justin Richardson, Supervisory Detention and Deportation Officer with ICE, and copies of Petitioner's Notice of Revocation of Release and Notice of Removal. ECF No. 7; ECF No. 7, attachs. 1–3. Respondents argue that Petitioner's detention is lawful under § 1231 and *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), Petitioner's detention has not exceeded the six-month presumptively reasonable period established by *Zadvydas* and Petitioner cannot demonstrate that his removal is not reasonably foreseeable. ECF No. 7 at 3–6.

Respondents also argue that ICE lawfully revoked Petitioner's OSUP pursuant to 8 C.F.R. § 241.13. *Id.* at 6–7. With respect to Petitioner's third-country fear interview, Respondents assert

[2] Respondents appear to reference this Court's Order issued on June 11, 2026, which dismissed as moot Petitioner's Motion for Leave to Proceed in Forma Pauperis, ordered Respondents to file an answer to the Petition within thirty days, and directed a response to the answer, if any, within twenty-one days. ECF No. 5 at 1. The Order did ***not*** impose a stay on or otherwise restrict Petitioner's transfer or removal in any way because this is an action under § 1231. To the extent Respondents contend that ICE paused removal efforts based on a stay issued by this Court, that contention is inaccurate. The Court reminds Respondents that they are expected to carefully review and individually evaluate this Court's Orders in ***all*** of their cases.

that Petitioner already received all process required by law and is not entitled to IJ review of his negative fear determination. *Id.* at 7–10. Finally, in a footnote, Respondents argue that Petitioner's claims are independently barred because he is a member of the certified non-opt-out class in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass 2025), which involves similar challenges to third-country removal procedures. *Id.* at 10 n.2.

Petitioner filed a reply on August 14, 2026, arguing that his continued detention is unlawful, ICE unlawfully revoked his OSUP, and he is entitled to IJ review of his negative fear determination as a matter of due process. ECF No. 12 at 2–6.

On August 21, 2026, the Court directed Respondents to file a supplemental response addressing whether there was a lawful basis for revoking Petitioner's OSUP pursuant to 8 C.F.R. § 241.12(i)(2) and whether the record establishes the "changed circumstances" required to support a determination that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. ECF No. 13. On August 27, 2026, Respondents filed a Supplemental Response along with the Declaration of Justin Richardson, Supervisory Detention and Deportation Officer at ICE, ERO. ECF No. 15; ECF No. 15, attach. 1. Respondents advised that, at the time of revocation, Mexico was considered a viable third country for Petitioner's removal, and ICE subsequently attempted to remove him there on March 16, 2026, but Petitioner refused to comply. ECF No. 15 at 2. Although Mexico has since informed DHS that "it will not accept Petitioner for removal," Respondents maintain that this development does not undermine the lawfulness of the February 2026 OSUP revocation because ICE had identified a viable removal option at the time and was not required to establish a guarantee of removal, just a "significant likelihood." ECF No. 15 at 2–3; ECF No. 15, attach. 1 at ¶ 6. Respondents further stated that ICE

is now seeking an alternative third country removal option. ECF No. 15, attach. 1 at ¶ 7. Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

### A. This Court is Not Barred From Reviewing Petitioner's Claims.

As an initial matter, the Court will address—and reject—Respondents' arguments that this Court lacks jurisdiction to review the Petition under 8 U.S.C. § 1252(g) and should dismiss the Petition because Petitioner is a member of the certified non-opt-out class in *D.V.D. v. United States*

*Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass 2025). In one footnote, Respondents "respectfully maintain their position that the INA, including 8 U.S.C. § 1252(g), bars judicial review of Petitioner's third country removal claims." ECF No. 7 at 7 n.1. In another footnote, Respondents contend that because Petitioner is a member of a non-opt-out class challenging similar third-country removal procedures, he cannot separately seek the same relief in this Court. ECF No. 7 at 10 n.2. They assert that the Petition should therefore be dismissed to avoid providing relief that may conflict with any relief ultimately provided to the *D.V.D.* class and as a matter of comity. *Id.*

This Court has previously found both arguments to be unpersuasive. *See Torres v. Rosa*, No. 2:26CV245, 2026 WL 1839065, at *6–7 (E.D. Va. May 29, 2026), *report and recommendation adopted*, No. 2:26CV245, 2026 WL 1836457 (E.D. Va. June 25, 2026). First, § 1252(g) does not deprive this Court of jurisdiction over Petitioner's claims. Section 1252(g) limits judicial review of the Attorney General's "decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders," but it does not bar review of every claim that arises during a removal. 8 U.S.C. § 1252(g). Here, Petitioner's claims challenge the adequacy of his removal procedures rather than the discretionary decision to execute his removal order. Accordingly, his claims fall within this Court's authority to adjudicate constitutional and statutory challenges to the procedures employed in effecting removal, rather than the merits of his removal order. Other courts within this District have taken up identical claims. *See, e.g.*, *Serpas v. Simon*, No. 1:25-CV-02369, 2026 WL 1244544 (E.D. Va. Feb. 3, 2026) (holding that petitioner's third-country removal to Mexico was not reasonably foreseeable, revocation of his OSUP was deficient, and petitioner was entitled to Immigration Judge review of his negative fear-of-removal determination); *Rivas Rojas v. Noem*, No. 1:25-cv-1624, Dkt. No. 18, Order (E.D. Va. Nov. 17,

2025) (finding jurisdiction over the petitioner's claims regarding, in part, the denial of petitioner's right to Immigration Judge review of a negative fear-of-removal determination); *Benitez Pineda v. Noem*, No. 1:25-cv-2337, Dkt. No. 17, Order (holding that Respondents violated 8 C.F.R. § 241.4(*l*) in revoking Petitioner's OSUP and finding that petitioner is entitled to Immigration Judge review of his negative fear-of-removal determination).

Second, the pending *D.V.D.* class action does not bar this Court's review of Petitioner's individual claims. In *D.V.D.*, the District of Massachusetts certified a class of aliens challenging the Department of Homeland Security's ("DHS") practice of removing individuals to third countries without adequate notice or opportunity to seek protection, and the court there issued a preliminary injunction requiring the Government to follow certain procedures before carrying out such removals. 778 F. Supp. 3d at 392–94. On June 23, 2025, the Supreme Court granted the Government's application to stay the preliminary injunction, which is currently on appeal before the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025). There has been no final judgment on the merits in *D.V.D.*, which means there is no res judicata effect that would preclude this Court's consideration of Petitioner's claims. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Under res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" (quoting *Montana v. United States,* 440 U.S. 147, 153 (1979))).

Nor do principles of comity compel a different outcome, as courts have recognized that non-opt-out class membership does not automatically strip district courts of jurisdiction where a petitioner raises individualized claims that, if not adjudicated, could evade meaningful review or result in irreparable harm before class-wide relief is resolved. *See, e.g.*, *Serpas*, 2026 WL 1244544, at *2 ("Petitioner brings claims concerning his ongoing detention, the revocation of an order of

supervision, and his removal to a third country under the due process clause, the INA, and the governing regulations that are substantively different than the claims at issue in *D.V.D.*, which largely focused on what procedural due process protections noncitizens subjected to a third-country removal are entitled to."); *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025) ("To dismiss Petitioner's claims for preliminary injunctive relief at this time would effectively preclude [Petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved."); *Santamaria Orellana v. Baker*, No. CV 25-1788, 2025 WL 2841886, at *11 (D. Md. Oct. 7, 2025) ("Here, however, [the petitioner] focuses on a due process argument based on the *Accardi* doctrine and the applicability of, but failure to comply with, the regulations in 8 C.F.R. § 1208.31. This argument was not squarely presented in *D.V.D.*, either at the district court or the Supreme Court, and neither court discussed the *Accardi* doctrine or analyzed the applicability of the procedural requirements specified in 8 C.F.R. § 1208[.]31(g) and at issue here.").

Accordingly, neither § 1252(g) nor the ongoing proceedings in *D.V.D.* precludes this Court from adjudicating Petitioner's individual claims.

**B. Due Process Required IJ Review of Petitioner's Negative Fear Determination, but Such Review is Now Moot.**

Petitioner does not contend that he was deprived of notice of Respondents' intent to remove him to Mexico or that the interview by the asylum officer was deficient. Rather, Petitioner argues that he may not be removed to Mexico without first being provided of an opportunity for IJ review of his negative fear determination. ECF No. 12 at 5–6. Petitioner notes that Respondents concede he has not received IJ review of that determination and contends that this Court has repeatedly held that an alien may not be removed to a designated third country until an IJ reviews a negative

fear determination. *Id.* Accordingly, Petitioner argues that he cannot be removed to Mexico until such review occurs and asks the Court to grant the Petition, order his immediate release, and enjoin his removal to Mexico pending IJ review. *Id.*

Respondents contend that Petitioner has already received the process required before his removal to a third country, specifically by receiving a third-country screening before a USCIS asylum officer and the procedures set forth in DHS's March 2025 Guidance Regarding Third Country Removals ("March Guidance"). ECF No. 7 at 7–10. Although Respondents acknowledge that this Court has previously held that an alien is entitled to IJ review of a negative fear determination, they nevertheless "respectfully note their position here simply to preserve such arguments for appeal if authorized by the Solicitor General." *Id.* at 7.

Here, Petitioner would be entitled to IJ review of any negative fear determination as a matter of procedural due process. As this Court has previously found, a decision by a single asylum officer in a third country screening, rather than the opportunity for review by an IJ, is insufficient to protect Petitioner's due process rights. *See Torres*, 2026 WL 1839065, at *8–11. In determining what procedures due process requires, courts balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Immigration and Nationality Act ("INA") authorizes removal to several categories of countries, including the alien's country of citizenship, birth, residence, or another country willing to accept the individual if removal to the primary countries is impracticable, inadvisable, or

impossible. 8 U.S.C. § 1231(b). The Secretary of Homeland Security also retains discretion to remove an alien to any country identified under the statute. 8 C.F.R. § 241.15(a). On March 30, 2025, DHS issued guidance establishing procedures for removing aliens with final removal orders to third countries. ECF No. 14, attach. 1. Under the March Guidance, before removing an alien to a third country not previously designated for removal, DHS must determine whether the United States has received credible "diplomatic assurances" that the individual will not be persecuted or tortured. *Id.* at 2. If such assurances exist, then DHS removes the alien "without the need for further procedures." *Id.* at 3. If, however, no such assurances exist, then DHS informs the alien of the intended removal, and only if the alien "affirmatively states a fear of removal" will USCIS conduct a screening within twenty-four hours to determine whether the alien is more likely than not to face persecution or torture. *Id.* If USCIS finds no such risk, the alien will be removed, but if USCIS does find such a risk, then the matter may be referred for further immigration proceedings or ICE may "choose to designate another country for removal." *Id.*

Certain aliens are entitled to credible fear or reasonable fear screenings under 8 C.F.R. §§ 208.30 and 208.31. Here, the parties do not argue that Petitioner is entitled to a credible fear screening under these provisions. In fact, no statute or regulation explicitly provides for IJ review of a negative third-country fear determination for an alien in Petitioner's position.

Nonetheless, Petitioner contends—and the Court agrees—that he is entitled to IJ review of the asylum officer's negative fear determination. Application of the *Mathews* factors weighs in favor of requiring this additional protection. First, Petitioner has a substantial interest in avoiding removal to a country where he may face persecution, torture, or other serious harm. An IJ previously granted Petitioner withholding of removal to El Salvador on July 8, 2015, establishing that he is entitled to protection from removal to that country. Although the Court is not aware of

what the precise basis for that protection was or otherwise what the particular circumstances underlying Petitioner's fear of removal to El Salvador were, the prior grant of withholding demonstrates that Petitioner has a significant interest in avoiding removal to a country from which he has been afforded protection. That interest is not diminished just because Respondents seek to remove Petitioner to Mexico rather than directly to El Salvador, particularly where Petitioner has expressed a fear of removal to Mexico.

The second factor—the risk of erroneous deprivation and the value of additional safeguards—likewise supports Petitioner. Unlike other immigration proceedings involving fear-based claims, where a negative fear determination may be reviewed by an IJ, Petitioner was afforded no IJ review of the asylum officer's determination. *See* 8 C.F.R. §§ 208.31(g), 1208.31(g) (providing for IJ review of negative fear determinations in proceedings where an alien faces reinstatement of a removal order). The absence of such review significantly increases the risk of erroneous deprivation, particularly where the consequences of removal may be severe and irreversible. *See, e.g.*, *Mendoza Palacios*, 2026 WL 933319, at *7 ("[W]here a person alleges that she would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."); *Cruz Medina*, 806 F. Supp. 3d at 549 ("[A] single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."); *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) ("If an immigration judge does not review USCIS's determination, including the evidence Petitioner provided, Petitioner will not have the opportunity to present his fear-based claim to a neutral adjudicator for correction of USCIS's potentially erroneous determination. And should Petitioner be erroneously removed to Cameroon, there would be no avenue for him to vindicate his rights in

the United States."). IJ review would therefore reduce the risk of erroneous removal while ensuring Petitioner has a meaningful opportunity to be heard.

Finally, the third *Mathews* factor also favors Petitioner because the additional procedure requested—IJ review of the asylum officer's negative fear determination—imposes only a limited burden on Respondents. As previously discussed, IJ review of negative fear determinations already exists in analogous immigration proceedings, including reinstatement and expedited removal contexts, and courts have recognized that such review is not unduly burdensome. *See, e.g.*, *Tomas-Ramos v. Garland*, 24 F.4th 973, 978 (4th Cir. 2022) (finding that a "reasonable fear review hearing" before an IJ "is not as comprehensive or in-depth as a withholding of removal hearing," but is instead "a review of the [ ] asylum officer's decision" (citation and internal quotation marks omitted)); *Sagastizado*, 802 F. Supp. 3d at 1012 ("Requiring IJ review in Petitioner's case provides significant but minimally burdensome procedural safeguards in the form of independent review by a subject-matter expert and the opportunity to receive a written explanation of a denial by an IJ.").

Moreover, requiring IJ review would impose only a minimal burden on Respondents' interest in promptly executing removal orders, particularly given that such review already exists in analogous immigration proceedings and is ordinarily conducted within ten days of any negative fear determination. *See* 8 C.F.R. § 1208.31(g) ("In the absence of exceptional circumstances, such review shall be conducted by the immigration judge within 10 days of the filing of the Form I-863, Notice of Referral to Immigration Judge, and the complete record of determination with the immigration court."); *Sagastizado*, 802 F. Supp. 3d at 1013 (recognizing that the Government has a "significant interest in the prompt execution of removal orders," but that limited IJ review of a negative fear determination imposes only a "minimal delay" in the removal process and serves the

public interest in "preventing aliens from being wrongfully removed" (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009))).

Respondents' reliance on the March Guidance does not change this conclusion. *See* ECF No. 7 at 10. Courts that have considered this issue have repeatedly concluded that the lack of IJ review raises serious due process concerns and, in some instances, renders the March Guidance unconstitutional. *See, e.g.*, *Faragalla v. Crawford*, No. 3:26-CV-63, 2026 WL 541132, at *7 (E.D. Va. Feb. 26, 2026) ("Respondent argues that all the process [petitioner] would be owed in such a circumstance is set out in the March Guidance and summarized in the eight-step process discussed *supra*. . . . But district courts within the United States Court of Appeals for the Fourth Circuit and across the country have found that the process in the March Guidance is unlawful." (citation omitted)); *Escobar v. Chestnut*, No. 1:25-cv-01801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional." (citing cases)).

Accordingly, based on the circumstances presented when this Petition was filed, due process would require that Petitioner receive IJ review of his negative fear determination before Respondents could remove him to Mexico. However, circumstances have since materially changed: Respondents' most recent update advises that Mexico has refused to accept Petitioner for removal. *See* ECF No. 15, attach. 1 at ¶ 6. Petitioner therefore can no longer be removed to Mexico, which is the very removal that would have triggered the need for IJ review. Although the Court agrees that Petitioner was entitled to IJ review as a matter of due process, such review is now moot because removal to Mexico is no longer a viable prospect. The Court therefore need not recommend such review at this time.

**C. Petitioner's Continued Detention is Unlawful Under 8 U.S.C. § 1231.**

The Petition further alleges that Respondents violated Petitioner's substantive due process rights under *Zadvydas* by continuing to detain him unlawfully despite the absence of a reasonably foreseeable likelihood of removal. ECF No. 1 at 6; ECF No. 12 at 2–4.

*1. Petitioner Has Been Detained Beyond the Presumptively Reasonable Period of Detention.*

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas*, 533 U.S. at 683. The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Id.* After that six-month period has elapsed, if the alien demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

Respondents argue that Petitioner's detention complies with *Zadvydas* because Petitioner has not been detained for six months. ECF No. 7 at 5. Respondents argue that because Petitioner has not been detained for six months, under *Zadvydas*, his detention is presumptively reasonable. *Id.*

Here, Petitioner's current period of post-final-order detention began on February 6, 2026—upon his arrest by ICE—but the instant Petition challenging his detention under *Zadvydas* was filed on May 29, 2026, fewer than four months later. *See* ECF No. 1. To that extent, Respondents

correctly observe that Petitioner could not, at the time of filing, argue that his detention was presumptively unreasonable because six months had not yet elapsed.

Although the Petition may have been filed before the six-month mark, the Court's review is not frozen in time as of the date of filing. Federal courts routinely consider post-filing developments in habeas proceedings challenging immigration detention. *See, e.g.*, *Suri v. Trump*, 785 F. Supp. 3d 128 (E.D. Va. 2025) (holding that habeas jurisdiction was proper in the Eastern District of Virginia despite subsequent developments in the petitioner's detention). Moreover, the structure of *Zadvydas* itself confirms that the six-month period operates as a presumption, not a rigid jurisdictional bar that forces federal courts to consider only evidence existing on the date of the petition's filing. During the initial six months, detention is presumptively reasonable and the Respondent bears no burden to justify confinement. But that presumption may be overcome if a petitioner demonstrates that removal is not reasonably foreseeable—even within the six-month period. *See Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no longer authorized." (citation omitted)). Once six months have elapsed, the presumption goes away, and the burden shifts to the Respondent to rebut a showing that there is no significant likelihood of removal in the reasonably foreseeable future.

To hold that this Court may not consider the passage of time occurring during the pendency of a habeas petition would effectively insulate detention from review so long as the petition was filed before the six-month mark, even if detention later became prolonged and potentially unreasonable. Such an approach would be inconsistent with *Zadvydas*, which makes clear that the

ultimate inquiry is whether continued detention remains reasonably necessary to effectuate removal.

Here, more than six months have elapsed since Petitioner was taken into ICE custody on February 6, 2026. His detention has therefore crossed the presumptively reasonable six-month threshold identified in *Zadvydas*. Accordingly, while Respondents are correct that Petitioner had not yet been detained for six months at the time he filed his Petition, that fact does not warrant dismissal. Because Petitioner has now been detained well beyond the six-month presumptive period, Respondents' argument regarding the Petition's prematurity no longer provides a basis to deny relief. The Court therefore proceeds to consider whether there is a significant likelihood of removal in the reasonably foreseeable future.

*2. Petitioner Has Been Detained Beyond the Presumptively Reasonable Period of Detention.*

Petitioner has now been detained for more than six months following his arrest on February 6, 2026. Accordingly, the six-month presumption of reasonableness recognized in *Zadvydas* no longer insulates his continued confinement. The burden therefore shifts: if Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must come forward with evidence sufficient to rebut that showing. *Zadvydas*, 533 U.S. at 701. Moreover, as *Zadvydas* makes clear, as the period of post-removal detention grows, what qualifies as the "reasonably foreseeable future" correspondingly shrinks. *Id.*

Here, Petitioner has met his initial burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner asserts that he has "cooperated with ICE in securing travel documents but ICE has not deported [him]," and this is sufficient to carry

his burden. ECF No. 1 at 6; *see Abuqare v. Perry*, No. 2:26-CV-207, 2026 WL 2112040, at *2 (E.D. Va. July 22, 2026).

Furthermore, Respondents fail to rebut Petitioner's showing because they cannot show that any country is presently willing to accept Petitioner for removal. In their Supplemental Response, Respondents now advise that Mexico has informed DHS that it will not accept Petitioner for removal, and Respondents identify no definite timeframe within which a third country will accept him for removal. Respondents state only that ICE is "searching for an alternate third country removal option at this time," without providing an estimated timeline for securing such a country. *See* ECF No. 15, attach. 1 at ¶ 7. Thus, even assuming that Mexico was a viable removal option when Respondents revoked Petitioner's OSUP, the record establishes no country willing to accept Petitioner and identifies no steps that ICE is taking to secure an alternative third country. As the period of detention continues to lengthen, the absence of any identified country willing to accept Petitioner and any estimate as to when an alternative third country may be secured further demonstrates that Petitioner's removal is not reasonably foreseeable.

Respondents also fail to rebut Petitioner's showing because they may not remove Petitioner to Mexico unless and until he receives the procedural protections required by due process, including review of his negative fear determination by an IJ. As previously discussed, due process requires that Petitioner receive IJ review of his negative fear determination before Respondents may remove him to Mexico. *See supra* Part II.B. Until those procedures occur, Petitioner's removal occurring within any definite period of time is unlikely, and his removal therefore cannot be considered reasonably foreseeable. *See, e.g.*, *Rojas Toj v. Mullin*, No. 1:26-CV-1142, 2026 WL 1458900, at *3 (E.D. Va. May 21, 2026) ("Although Petitioner has had an interview with an asylum officer regarding his fear of removal to Mexico, he is entitled to review of his removal

before an IJ before any such removal could occur. . . . Under these circumstances, Petitioner's removal within any finite period of time is exceedingly unlikely." (citation omitted)); *Portela-Hernandez v. Trump*, No. 25-1633, 2026 WL 74042, at *14 (D. Md. Jan. 9, 2026) ("Without immigration judge review of the negative fear finding, the Government has not afforded [petitioner] all the process he is constitutionally due. . . . Respondents cannot overcome *Zadvydas*'s due process requirements by skipping other procedures that are constitutionally due."); *Nolasco Renderos v. Baker*, 814 F. Supp. 3d 598, 607 (D. Md. 2026) ("[Petitioner] is entitled to the protections of 8 C.F.R. § 208.31, and yet the government has not yet initiated these procedures. . . . Respondents have refused to follow the procedures required by the governing regulations, and it is that refusal that is the source of delay in the adjudication of Petitioner's claim.").

Respondents' argument that removal is foreseeable because they attempted to remove Petitioner to Mexico once is unpersuasive, as that attempted removal occurred before Petitioner was afforded the procedural protections to which he is constitutionally entitled. The fact that Petitioner refused to comply with a removal that had not yet satisfied due process requirements does not establish that any lawful removal is reasonably foreseeable.

Accordingly, Petitioner has sufficiently met his burden of demonstrating that his removal is not reasonably foreseeable, and Respondents have not rebutted that showing.

**D. Respondent's Revocation of Petitioner's OSUP Was Unlawful.**

Petitioner finally alleges that ICE had no lawful basis to revoke his OSUP because it lacked the "changed circumstances" required by 8 C.F.R. § 241.13(i)(2) to establish a significant likelihood of his removal in the reasonably foreseeable future. ECF No. 12 at 5. Although ICE notified Petitioner that it had revoked his OSUP based on its selection of Mexico as his third country of removal, Petitioner contends that the notice identified no agreement by Mexico to

accept him, negotiations toward such an agreement, or other development to make his removal to Mexico more likely. *Id.* at 4. Respondents argue that the revocation was lawful because ICE followed all required procedures under § 241.13(i)(3) by notifying Petitioner that he was being detained for removal to Mexico, providing him with a Notice of Removal identifying Mexico as his destination, and conducting an informal interview regarding the reasons for revocation. ECF No. 7 at 6–7. In their Supplemental Response, Respondents maintain that § 241.13(i)(2) requires only a determination that there is a "significant likelihood" of removal in the reasonably foreseeable future, not a "guarantee" of removal. ECF No. 15 at 2. Thus, according to Respondents, Mexico's subsequent refusal to accept Petitioner for removal "does not negate the fact that" ICE determined that removal was reasonably foreseeable when Petitioner's OSUP was revoked in February. *Id.* at 3.

Under the INA's implementing regulations, DHS "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Here, Respondents did take steps to effectuate Petitioner's removal to Mexico, including attempting to remove him there on March 16, 2026. *See* ECF No. 7, attach. 1 at ¶¶ 29–30; ECF No. 15, attach. 1 at ¶¶ 6–7.

Nevertheless, circumstances have changed during the pendency of this litigation. Respondents now advise that Mexico has informed DHS that it will not accept Petitioner. ECF No. 15, attach. 1 at ¶ 6. Respondents state only that ICE is "searching for an alternate third country removal option at this time," without identifying a country that has agreed to accept Petitioner or providing any estimate as to when such a country may be secured. *Id.* at ¶ 7. Thus, whatever

likelihood of removal may have existed when Respondents revoked Petitioner's OSUP, removal to Mexico is no longer viable, and Respondents have not identified an alternative destination.

Under § 241.13, Respondents bear the burden of proving that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future. *See Garcia-Rivera*, 2026 WL 1244545, at *3 (quoting *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025)). Accordingly, regardless of whether there *were* circumstances to support revocation, circumstances *now* do not establish a significant likelihood that Petitioner's removal is reasonably foreseeable under § 241.13(i)(2).

## III. RECOMMENDATIONS

For the reasons explained above, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**. The undersigned further **RECOMMENDS** that Petitioner be **RELEASED** from custody immediately, and that Petitioner's Order of Supervision be **RESTORED** immediately, not to be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.13. It is further **RECOMMENDED** that Respondents be **ENJOINED** from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within

fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

**/s/**
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 4, 2026